IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ERNEST L. KEGLER, JR.,

      Movant,

v.                          Case No. 2:06-cv-00339
                                  Case No. 2:04-cr-00012-01

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (docket # 260), filed by Movant, Ernest Leland Kegler, Jr. (hereinafter "Defendant").  This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(b).

## PROCEDURAL HISTORY

On January 30, 2004, Defendant was indicted by a federal grand jury on one count of engaging in a conspiracy to distribute 50 or more grams of cocaine base, in violation of 21 U.S.C. § 846 (Count One of a fourteen count indictment) (# 1).  On January 3, 2005, Defendant pled guilty, pursuant to a written plea agreement (## 137-140).  Prior to the plea hearing, the United States filed an Information pursuant to 21 U.S.C. § 851, seeking an enhanced sentence because Defendant previously had been convicted of a

felony drug offense (# 133).

At the plea hearing, Defendant entered a voluntary guilty plea and admitted that he previously had been convicted of a felony drug offense, thus exposing himself to the minimum mandatory sentence of twenty years (Tr. Plea Hrng, # 233).  On April 28, 2005, Defendant was sentenced at the bottom of the Guideline range to a term of imprisonment of 240 months, pursuant to 21 U.S.C. § 841(b)(1)(A)(iii).  A judgment order to that effect was entered on May 9, 2005 (# 183) (Goodwin, J.).  Defendant did not appeal his conviction or sentence to the United States Court of Appeals for the Fourth Circuit.

On May 10, 2006, Defendant filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  The grounds for relief are stated as follows:

> Counsel encouraged me to give false testimony on others about drug dealings.
>
> I was promised substantial assistance in a letter from agent in Richmond, VA for assistance I gave.  I never received it.
>
> Federal agents falsified evidence by attributing drugs to Ramone Carter and Michael Poindexter, alleging I made statements against them in early '04.  I was never debriefed until Jan. '05.  The statements can be found in Carter's and Poindexter's PSIs [presentence investigation reports] that were both completed in Aug '04 before I was debriefed.
>
> I was persuaded to take the plea by my counsel Greg Courtright who said I would never get a fair trial being Africa American in West Virginia, an 97% Caucasian state.
>
> I was denied discovery info from Ramone Carter, the individual who attributed 1 kilo of cocaine base to me in

my presentence report.

Agent Wren Ray informed me that he was aware that Kenneth
Binns & Richard Johnson were passing their debriefings
around South Central Regional Jail, asking others to join
them in a conspiracy to make Ernest Kegler a drug kingpin
(get out of jail free card).  These actions allowed Shawn
Armstrong, Damel Ford, Clayton Cato, Mark Armbrester, and
Johnny Dowdy information to use at their grand jury
hearing against me.  Since my plea and sentencing, Binns
and Johnson have both been discredited and were not
reliable witnesses at a sentencing hearing against
Michael Parker, who called me as a witness.  Binns and
Johnson alleged I gave them drugs to give Parker.
Kenneth Binns & Richard Johnson are cousins who started
the entire conspiracy.

My plea of guilty was not because I was indeed guilty but
because my prior criminal history and the promise from
prosecutor John Frail that I would receive a life
sentence at trial persuaded me.  Category 6 - Level 42.
There is no physical evidence to connect me to this level
of crime.  No pictures, drugs, money, property, phone
records, video surveillance, or attempted buys.  Only the
self-serving testimony of individuals who received 50% or
more sentence reductions and have since been discredited.

I never filed an appeal because my counsel informed me
that I needed a legal argument.  After asking her to file
it after my sentencing hearing, she convinced me that I
had no argument.

At sentencing, prosecutor offered 150 to 500 grams, level
34, 2 point management role instead of 4 point leadership
role.  If I contested no evidence, which put me at 20-25
years instead of life, which is what I would have been
arguing for, which did not allow me to present any
evidence as to my innocence.

(# 260, at 14-19.)

On July 5, 2006, pursuant to the undersigned's Order, the
United States filed a Response to Defendant's section 2255 motion,
stating that Defendant is entitled to no collateral relief (# 272).
The Response denied that Defendant was prejudiced by his attorneys,

3

and attached affidavits from the lawyers, disputing Defendant's claims.  The government asserted that it is unaware of any promise to file a substantial assistance motion for Defendant.  Id., at 6. With respect to the testimony of witnesses at Defendant's sentencing hearing, the Response noted that objections as to drug quantity were resolved at sentencing by stipulation, and no witness testified at the sentencing hearing.  Id., at 6-7.

Defendant filed a copy of a DEA form 6, reflecting that Defendant was debriefed on March 9, 2005 (# 289).  Defendant's reply (# 290) asserted that he was denied effective assistance of counsel with respect to the entry of his guilty plea and the promise of a substantial assistance motion.

In order to address factual issues relating to the alleged substantial assistance motion, the undersigned ordered the United States to supplement the record with a sur-reply (## 292, 293).  It was filed with several affidavits and exhibits, stating the position that Defendant's lack of truthfulness during debriefings led to the government's conclusion that Defendant could not be used as a witness, and did not render substantial assistance.

Defendant filed a traverse/reply to the sur-reply (# 295), in which he claims that

> the government has falsified evidence, doctored
> testimony, threatened and made promises which it claims
> to be unaware of.  Clearly the preponderance of evidence
> presented in defendant's argument shows that defendant
> was under the impression that he was to receive a
> substantial assistance motion for accepting the plea
> agreement.  The evidence clearly shows the trickery,

deceit, and misconduct the government is using to deny defendant justice.

### ANALYSIS

It is well settled that, "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982) and United States v. Maybeck, 23 F.3d 888, 891-92 (4th Cir. 1994)).

> The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. *See Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed.2d 397 (1986). And, in order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence. *See id.* at 496, 106 S. Ct. 2639.

186 F.3d at 493.

In light of Defendant's failure to take a direct appeal, he must show cause and actual prejudice, or he must show that a miscarriage of justice would result if his motion were denied. Defendant signed a plea agreement in which he agreed to plead guilty to an offense carrying a minimum mandatory twenty year sentence (# 140). He testified under oath at his guilty plea hearing in which he admitted the factual basis for his guilty plea,

5

and acknowledged having a prior drug felony, which exposed him to a minimum mandatory twenty year sentence.  Defendant was sentenced to serve twenty years.  Thus Defendant has not shown that he was prejudiced in any respect, or that he suffered a miscarriage of justice.

Nonetheless, the undersigned has considered Defendant's grounds for relief, and will focus on two issues which merit discussion: (1) was Defendant denied effective assistance of counsel when his attorney did not take a direct appeal on his behalf; and (2) was Defendant's guilty plea induced by a promise of a substantial assistance motion?  Defendant's other complaints (false testimony against him, whether he could receive a fair trial in West Virginia, quality of the government's evidence, discovery materials) are clearly not meritorious, given Defendant's guilty plea.

A simple chronology of Defendant's case and his attorneys is as follows:

```
7/20/04    Dennis H. Curry appointed as counsel
7/21/04    Defendant's first appearance in this District
           (arraignment and detention hearing)
7/21/04    Defendant ordered detained
8/4/04     USA provides discovery materials
8/25/04    Order granting Defendant's motion to continue trial
9/30/04    Dennis H. Curry moves to withdraw as counsel
10/7/04    Motion to withdraw granted
10/18/04   Gregory M. Courtright appointed as counsel
10/21/04   Order granting Defendant's motion to continue trial
12/9/04    USA provides supplemental discovery materials
12/22/04   Defendant signs plea agreement
12/28/04   USA files Information as to Defendant's prior conviction
1/3/05     Guilty plea hearing; sentencing set for 3/28/05
1/25/05    Gregory M. Courtright moves to withdraw as counsel
```

```
1/31/05    Motion to withdraw granted
2/7/05     Deirdre H. Purdy appointed as counsel
3/3/05     Order granting Defendant's motion to continue sentencing
4/28/05    Sentencing hearing
```

**Alleged coerced guilty plea/fair trial**

Defendant was represented by attorney Greg Courtright when he entered his guilty plea.  Defendant asserts that Mr. Courtright persuaded him to plead guilty because he would not be able to get a fair trial.  (# 1 at 14).  Defendant further asserts:

> My plea of guilty was not because I was indeed guilty but because my prior criminal history and the promise from prosecutor John Frail that I would receive a life sentence at trial persuaded me.

(Id. at 17).

The United States' response states:

> With respect to defendant's allegation that he was persuaded to enter a guilty plea, at his plea hearing, defendant was questioned at length by the court with respect to the legal implication of his guilty plea and his understanding of the charged offense.  Defendant repeatedly asserted that his guilty plea was completely voluntary.  In the instant motion, defendant has offered no evidence to prove that his plea was involuntary.

(# 272 at 5).  The government included an affidavit from Mr. Courtright which states: "At no time did I ever tell Mr. Kegler he would not get a fair trial in West Virginia."  (# 272, Ex. 1.) Defendant has not rebutted Mr. Courtright's affidavit, and Defendant did not testify at any of the evidentiary hearings.

It is apparent from the lengthy and detailed colloquy at the plea hearing that Defendant's guilty plea was entered knowingly and voluntarily, with a complete understanding of the punishment he

faced by virtue of his plea.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to establish that his guilty plea was coerced or that he was told that he could not get a fair trial.

## Failure to take a direct appeal

When Defendant was sentenced, Judge Goodwin advised him that he had a right to appeal the sentence, and "must file a written notice of appeal with the clerk of this court within 10 days of the order of sentence and judgment." (Tr. Disp. Hrng., # 299, at 13.)

The government's response includes an affidavit of Defendant's attorney at sentencing, Deirdre H. Purdy, which states as follows:

> 11. Because Mr. Kegler's sentence was the absolute lowest sentence that Court could impose under the plea agreement that was reached prior to my representation, and because this sentence was arrived at by stipulation, to which Mr. Kegler agreed, I advised Mr. Kegler that he had no meritorious grounds for an appeal.
>
> 12. Nevertheless, I also advised him, if he wished, I would file an appeal on his behalf; however, Mr. Kegler decided not to notice an appeal.

(Response, # 272, Ex. 2, at 2-3.)

At the evidentiary hearing, Ms. Purdy testified about the possibility of an appeal as follows:

> Q. So in your opinion, were there any grounds for appeal?
> A. No, or I would have brought an appeal.
> Q. Now, if Mr. Kegler had insisted upon you taking an appeal, you would have done so?
> A. Of course. Of course.

(Tr. Evid. Hrng., # 317-2, at 55.)

Defendant has not presented any evidence to rebut Ms. Purdy's

8

statements.  The undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to establish that he asked Ms. Purdy to file an appeal on his behalf.

## Alleged promise of substantial assistance motion

Defendant's § 2255 motion contains the assertion that "I was promised substantial assistance in a letter from agent in Richmond, VA for assistance I gave.  I never received it."  (# 260, at 14.) Defendant has not produced such a letter.

The government's Response states that it "is unaware of any alleged promise [of a substantial assistance motion] and defendant's claim is unsubstantiated."  (# 272, at 6.)  This spare response was quite inadequate; it has taken considerable effort to develop most, but not all, of the facts relating to the purported promise of a USSG § 5K1.1 motion (also referred to as a "Rule 35 motion" or a "motion for substantial assistance").  A chronology of events and representations is of assistance.  The undersigned summarizes below the testimony given at the evidentiary hearings, and the exhibits admitted into evidence.

## The Case in the Eastern District of Virginia

Drug Enforcement Administration ("DEA") Special Agent Wren Ray testified that federal agents, particularly Richmond, Virginia Task Force Officer ("TFO") Don Maxwell, were investigating a subject named Jose Jaimes who was supplying cocaine to dealers in Virginia and West Virginia.  (Tr. Evid. Hrng., # 317, at 64.)  Among the subjects were Ernest Kegler, Johnny Kegler, and Dennis Brown.  Id.

9

On December 2, 2002, TFO Maxwell, Henrico County Police Investigator Jeff Miles, and Assistant United States Attorneys ("AUSAs") Brian Whisler and Elizabeth Wu interviewed Defendant at the Guilford County Jail, Greensboro, North Carolina, where he was serving a 9 to 11 month state sentence for obtaining property by false pretenses. TFO Maxwell told Defendant that they were there due to the fact that Defendant was a target in an investigation involving Michael Patterson, Mark Goins and others. Maxwell told Defendant that if he co-operated in providing truthful information in reference to this case, he could possibly receive consideration from the government on any charges associated with this case. The investigators concluded that Defendant was not truthful and that Defendant would not be useful to the prosecution. The debriefing memo indicates that they discussed Michael Patterson, Mark Anthony Goins, Dennis Brown, Brian Jones, and Trevor Little. With respect to Dennis Brown, the debriefing memo states that Defendant said "that he knows Brown and that Brown lives in Fayetteville and sells pit bulls. Stated that Brown was in the military and was not a bad guy." Def. Exs. 13, 14 and 16.[1]

A federal grand jury sitting in the Eastern District of Virginia returned an indictment against Jose Jaimes, Brenda Jaimes, Dennis Brown, and Dywan King on February 19, 2003. <u>United States</u>

---

[1] All exhibits marked "Def. Ex." and referenced in this Proposed Findings and Recommendation are documents which were admitted into evidence during the various hearings. Documents marked "Court's Ex." were obtained by court staff and filed in this action.

<u>v. Jaimes</u>, No. 3:03-cr-00052 (E.D. Va.).   Jose Jaimes remains at
large.  (Tr. Evid. Hrng., # 317, at 109.)  Brenda Jaimes' case was
transferred to the Middle District of North Carolina, pursuant to
Rule 20, *Fed. R. Crim. P.* <u>Id.</u>, # 11.  Dennis Brown was arrested on
December 30, 2003, in the Middle District of North Carolina.  <u>Id.</u>,
# 12.  Dennis Brown pled guilty in the Eastern District of Virginia
on May 12, 2004 (<u>id.</u>, # 35), and was sentenced on September 17,
2004 (<u>id.</u>, ## 62, 64).  Dywan King was arrested on June 14, 2004
(<u>id.</u>, # 46), pled guilty on October 20, 2004 (<u>id.</u>, # 67), and was
sentenced on January 24, 2005 (<u>id.</u>, ## 78-79.)

On April 15, 2004, AUSAs Wu and Whisler interviewed Defendant,
but he invoked his right to counsel and the interview ended.  (#
335, at 5.)  On April 27, 2004, AUSA Elizabeth Wu requested and
obtained a writ of habeas corpus *ad testificandum* for Defendant to
appear at Richmond, Virginia on May 12, 2004, to testify as a
potential rebuttal witness in <u>United States v. Dennis Brown</u>, No.
3:03-cr-52-3 (E.D. Va.).  Court Ex. 1 (Oct. 26, 2007); # 335, at 5.
Defendant was transported from North Carolina to the Eastern
District of Virginia, arriving on May 11 and remaining until June
7, 2004; he was then returned to North Carolina custody.  Court
Exs. 2 and 3 (Oct. 26, 2007).  On May 12, 2004, the day of his
trial in Richmond, Virginia, Dennis Brown entered a guilty plea.
On June 11, 2007, Dennis Brown wrote a letter "to whom it may
concern," which states as follows: "Be advised that my attorney,
Mary Martin, informed me that Ernest Kegler would testify on me

11

upon taking my case to trial.  Thus, the decision to plea was greatly persuaded." Def. Ex. 15.

The undersigned and Defendant's appointed counsel were unsuccessful in obtaining the testimony of AUSA Elizabeth Wu concerning Defendant's assistance to the Eastern District of Virginia.  The United States further contends:

> [P]etitioner was not promised a resolution of any charges pending against him in federal court in West Virginia. Subsequently, petitioner was brought to the Eastern District of Virginia as a potential rebuttal witness in defendant Dennis Brown's trial but Mr. Brown entered a guilty plea and no trial was held, nor did petitioner testify.  Petitioner does not deserve a Rule 35 motion based on the limited information he provided to the United States Attorney's Office for the Eastern District of Virginia.

Id.

The Case in the Southern District of West Virginia

On November 3, 2002, Defendant and Louis Terrell ("Stink") Reaves were interdicted in a rental car by drug agents, who seized a large amount of currency, which the government alleged to be proceeds from the distribution of controlled substances.  United States v. $38,310.00, No. 2:03-cv-0026.  Defendant and Reaves defaulted and a final order of forfeiture was entered April 2, 2003 by the Hon. John T. Copenhaver, Jr.

On January 30, 2004, a federal grand jury sitting in the Southern District of West Virginia returned an indictment against Ernest L. Kegler, Jr., Johnny Kegler, Ramone Carter, David Perkins, and Michael Poindexter.  United States v. Kegler, No. 2:04-cr-12

(S.D. W. Va., # 1.)  David Perkins and Michael Poindexter were the first defendants to be arrested, which occurred on February 4, 2004 (## 11, 15).  The next defendants to be arrested were Ramone Carter (# 40), and Defendant (# 53).  Ramone Carter and David Perkins entered guilty pleas on June 28, 2004 (## 61, 63-69).  Michael Poindexter pled guilty on July 7, 2004 (## 72-75).  Defendant pled guilty on January 3, 2005 (## 137-140).

On November 22, 2005, Johnny Kegler, Defendant's brother, was arrested in the Eastern District of North Carolina and committed to the custody of the Marshals Service for transport to this District (# 216).  He made his first appearance in this District on January 6, 2006 (# 225).  Johnny Kegler pled guilty on April 3, 2006 (## 250-54), and was sentenced on August 1, 2006 (# 285).

On August 19, 2004, Defendant's attorney, Dennis H. Curry, wrote to Defendant as follows [emphasis in the original][2]:

> I initiated a teleconference with Assistant United States Attorney John Frail about your case.  I thought that I had remembered about some activity in Virginia in which you were a part that could impact what we do here with your case.  I am aware that you had some sort of deal with federal prosecutors in Richmond to testify and receive, in exchange a Motion for Substantial Assistance.  According to Mr. Frail, a Rule 20 plea had been contemplated thereby taking care of the charges here also.  I am of the opinion *preliminarily* that a Motion for Substantial Assistance is most likely *still* the best course of action in your case.

* * *

---

[2] Highlighted sentences pertain to a Rule 35 motion for substantial assistance.

My opinion is that once a defendant decides to work with the Government, it *never* benefits him to reverse his position – because any former testimony and/or statements given as "assistance" are also available for use against the defendant.   Thus, I think that (if the previous assistance in Richmond is true), we need to continue on that route.   In any event, considering all of the circumstances that I have outlined, we need to seriously discuss a Motion for Substantial Assistance.  *As you may know, a Motion for Substantial Assistance allows the Court to depart entirely from the Guidelines at sentencing – although not from a mandatory minimum.* Incidentally, Mr. Frail has given me confidence that such a Motion would be offered by the Government. He has never failed me yet. Def. Ex. 4.

On September 14, 2004, Mr. Curry again wrote to Defendant

[emphasis in the original]:

As I indicated to you that I would, I talked to John Frail, Assistant United Attorney, just now. The Government admits that the authorities from Eastern District of Virginia had offered to assist you here in exchange for your help there.  The level of help can be quite significant.  Mr. Frail intends to make a Motion for Substantial Assistance at the conclusion of your case. I assume that you realize that such a motion is the best possible outcome in your case (except, of course, a complete acquittal).

                              * * *

*To keep our eyes on the ball here, it is the Motion for Substantial Assistance that will ultimately help you and not an argument over relevant conduct.*

Mr. Frail proposed that you likely can give further information about Louis "Stink" Reeves. You have already assisted enough to get a Motion (as I analyze Mr. Frail's conversation) but further willing assistance to the Government could get a deeper cut in your eventual sentence.  Consider.

                              * * *

I have not studied the discovery as I will yet.  Our last conversation on the 10th was much to the effect that many witnesses against you are lying and inflating your role.

14

There is nothing new there.  In the grand scheme of things, though, it sounds like they cannot really hurt you in a practical matter because you have enough "drug weight" against you (much, if not all, from your own statements in Richmond maybe) to "max out" the Guidelines.  If so, the only (and best) "game" in town is a Motion for Substantial Assistance (by the Government) to the effect that you have rendered valuable assistance and should be rewarded for it.  Then the Guidelines are ignored and your sentence is reduced commensurate with your assistance.

When we get to Guideline calculations, if you "max out" at Level 38, then it gets immediately reduced from Level 38 to Level 35 by "Acceptance of Responsibility" (a "payoff" for entering a plea rather than going to trial).  After that, the expected (and *earned*) Motion gets a further reduction as far as the Court wants to go.  *In real terms, I think that this is the direction that we are heading.* Def. Ex. 5.

On September 30, 2004, Mr. Curry had to withdraw as counsel for Defendant due to a conflict of interest which arose (# 106).

On January 3, 2005, Defendant, his counsel Mr. Courtright, and AUSA John Frail met in the U.S. Marshals lock-up and discussed Defendant's entering a guilty plea and receiving a motion for substantial assistance.  Mr. Courtright testified that a Rule 35 motion "had been discussed with the prosecutor, and Mr. Kegler, when I was representing him, was very interested in working towards a Rule 35 motion."  (Tr. Evid. Hrng., # 317, at 23.)  Mr. Courtright stated, "I don't think what he had done was enough [for a Rule 35 motion].  I think Frail was expecting him to do some additional work and cooperation in West Virginia, but everybody knew he had done some work already in another state." Id.

Defendant entered his guilty plea later that day.  The plea

agreement is Def. Ex. 1.

On January 5, 2005, Defendant was debriefed by DEA Special
Agent Wren Ray.  The court has not been provided that the report of
that debriefing.   Agent Ray testified about that debriefing as
follows:

> Q.   Do you know if you had any discussions with AUSA
> Frail regarding a Rule 35 motion for Kegler after his
> plea?
> A.   I think if we – the only thing I can remember we
> talked about after his plea was let's get out there,
> let's get him debriefed, and let's see what he has to
> tell us, what proffer he has to make, and see how this
> applies to the investigation, and as long as it, you
> know, as long as it matches up in terms of as long as it
> provides us information we can act on, you know, yeah, he
> was probably going to be able to work towards the
> possibility of having a Rule 35.
> Q.   What information were you looking for?
> A.    We were hoping he would provide information on the
> local players here in West Virginia, to corroborate
> information we already had and/or information we didn't
> have.  We were also hoping he would provide information
> on the targets, some of the targets that they looked at
> in Virginia, as well as Hosea [sic; Jose] Jaimes and his
> sister who we thought were hooked into a large
> organization that was smuggling cocaine and marijuana.
> We were hoping he would provide information against those
> targets that would allow us to further the investigation
> as well.
>
> * * *
>
> A.    * * * It seemed like he was okay talking a little
> bit about some of the local players, but as soon as we
> started trying to get into, you know, tell me about the
> people you were dealing with in Virginia, tell me about
> some of the large players in the organization, he didn't
> seem very interested in talking about those people.

(Tr. Evid. Hrng., # 317, at 73, 75.)  Defendant admitted, in the
March, 2005 debriefing, that he was not truthful during the
January, 2005 debriefing with respect to Michael Parker.

16

On January 7, 2005, Defendant wrote a letter to the Hon. Joseph R. Goodwin, the District Judge presiding over his case:

> I was in court before you Jan. 3, 05 for a plea acceptance hearing. I initially planned to reject the plea because I was never a part of this conspiracy. Since I had never been questioned by agents concerning this case, I wanted to talk with them to tell them that I was being made a fall guy or scapegoat. Mr. Frail made it clear that he had enough evidence against me and that in order to avoid a life sentence, I had to accept the plea. My counsel informed me that I would not be offered the plea again if I didn't accept it then. Mr. Frail told me that agents in Richmond, VA informed him that I assisted them and a motion for substantial assistance would be given if I took the plea (a 35 Motion). He gave examples of guys who were offered similar deals who took them and received 15 yrs and others who didn't and received life sentences. He said if he filed the assistance motion that you usually cut sentences in half, leading me to believe that I could get 15 yrs, maybe even 10 if I cooperated fully. Persuaded by my counsel, intimidated and confused, I took the plea. On Jan 5, 05, Agent Wray [sic: Ray], my counsel and an unknown agent came to debrief me at Carter County Jail. * * * [I]n order to sound believable, I agreed with testimony that others made against me. I also made up other stories to receive more assistance. After the debriefing, Agent Wray [sic: Ray] told me I did not provide enough information and would likely not receive the assistance motion. I believe I've been misguided by my counsel. * * * Def. Ex. 2.

On January 25, 2005, Mr. Courtright moved to withdraw as Defendant's counsel (# 148), and Ms. Purdy was appointed (# 154). Confronted with Defendant's plea to a minimum mandatory sentence of 20 years, and a debriefing in which Defendant admitted that he did not tell the truth, Ms. Purdy arranged for another debriefing in an effort to improve Defendant's chance for a Rule 35 motion. (Tr. Evid. Hrng., # 317, at 45-46.)

On March 9, 2005, Defendant, with counsel Ms. Purdy present,

was debriefed by AUSA John Frail, Metro Drug Unit Detective J.C. Powell, Task Force Officer A.C. Napier, and DEA Special Agent Wren Ray. (Tr. Evid. Hrng., # 317, at 46-48.)  They discussed Kenneth Binns, Brian Woodson, Louis "Stink" Reaves, Michael Patterson, Mark Goins, and others.  The DEA 6 includes the statements, "KEGLER stated that he never sold crack cocaine to Michael PARKER.  KEGLER said that he lied to SA ray on the first debriefing concerning PARKER."  Def. Ex. 9.  No one has questioned Defendant's truthfulness during this debriefing.

On April 28, 2005, at Defendant's sentencing hearing, AUSA Frail stated:

> Your Honor, I would advise the Court that Mr. Kegler has indicated a desire to cooperate with the Government.  He also has cooperated with the United States Attorney's Office for the Eastern District of Virginia, Richmond, and was prepared to testify at a trial in which they were involved.  His cooperation is on-going.  He continues to provide information.  And the Government anticipates being back on his behalf pursuant to Rule 35.  Def. Ex. 11, at 8-9 (# 299).

On May 9, 2005, Defendant's Judgment Order was entered (# 183).

On January 5, 2006, Defendant's counsel for sentencing, Deirdre Purdy, moved to be re-appointed to represent Defendant in post-sentencing proceedings, advising that AUSA Erik Goes told Ms. Purdy that Defendant "is being returned to this district for purposes of testifying in a related criminal case" (# 223).  The motion was granted on January 12, 2006 (# 229).

Ms. Purdy testified at the evidentiary hearing that

postsentencing, she "got no helpful response" [from Mr. Frail].
(Tr. Evid. Hrng., # 317-2, at 53, 60.)  She stated that she was
informed of Defendant's assistance to the Eastern District of
Virginia by both Mr. Frail and Defendant.  Id., at 57-59.

On February 17, 2006, Defendant testified at the contested
sentencing hearing in the case of United States v. Michael Parker,
No. 2:04-cr-120 (S.D. W. Va.), before the Hon. John T. Copenhaver,
Jr.  In his findings of fact, Judge Copenhaver credited the
testimony of Defendant and rejected the testimony of Kenneth Binns
and Richard Johnson.  Judge Copenhaver noted: "Both Binns and
Johnson have been the beneficiary of substantial assistance motions
by the government, have had their sentences reduced drastically as
a result, and remain in custody, giving each a motive to falsify
their testimony while continuing to cooperate with the government."
Parker, Tr. Disp. Hrng., # 55, at 3.  The United States noted its
objection to the finding that Binns and Johnson lacked credibility.
Id., at 6.  Special Agent Wren Ray testified that he debriefed
Michael Parker after Parker was sentenced, and Parker stated that
Defendant lied at Parker's sentencing hearing.  (Tr. Evid. Hrng.,
# 317, at 85-88).

At the evidentiary hearing, Special Agent Ray was questioned
extensively concerning efforts to further Defendant's cooperation
and assistance after Defendant's sentencing.  He testified:

> I think AUSA Frail and I discussed what Mr. Kegler had to
> offer was did he have anything else, and I think my
> opinion was, after looking at the testimony or the

> reports he already provided, was that I thought there was
> some problems with his statements, and I didn't see the
> value of going out and taking more information from him
> if he had already lied in the first statements.  They
> also thought he had credibility problems.

Id., at 81-82.  When asked about the last time that Agent Ray and

AUSA Frail discussed a Rule 35 motion for Defendant, he stated:

> I'm positive we would have discussed the fact that he had
> testified in Mikey Parker's trial [sic; sentencing], and
> I would have given my opinion that I thought Ernest
> Kegler was lying at that trial.  Now, what impact that
> may have had on AUSA Frail's decision, that's for AUSA
> Frail to say.  But I would hold that my opinion was that
> Ernest Kegler was lying at Mike Parker's sentencing.  And
> the subsequent debriefing we did with Michael Parker
> seemed to support that view, that Ernest Kegler had lied
> there, he had lied earlier in his debriefings.

Id., at 87-88.

At the evidentiary hearing, AUSA Frail testified concerning

the statements in Mr. Curry's letters to Defendant which were

attributed to him.   Id., at 123-130.  He stated that as of

September 14, 2004, he had no intention of making a Rule 35 motion

for Defendant, and he had no contact with the Eastern District of

Virginia.  Id., at 131.  He further testified that after Defendant

was sentenced, and at the request of Ms. Purdy, he contacted an

AUSA in the Eastern District of Virginia, probably Ms. Wu, and

asked her, "do you from the Eastern District of Virginia believe he

has earned a motion for substantial assistance, and she replied

emphatically no."  Id., at 139.

AUSA Frail indicated that he was hopeful that Defendant would

provide information on Louis "Stink" Reaves which could be

20

corroborated, but Defendant's information could not be verified by other witnesses.  Id., at 139-40.   Then Mr. Frail addressed Defendant's testimony at the Michael Parker sentencing hearing:

> Then along about February of the following year, Mr. Kegler appeared as a witness in the Mikey Parker sentencing.  And while I wasn't part of that prosecution, I did sit in the courtroom when he testified, and in my estimation, he was completely untruthful.  The two government witnesses that testified, Mr. Binns and Mr. Johnson, I believe were truthful and accurate because their testimony was corroborated by other witnesses in the investigation.
>
> It is true that Judge Copenhaver found those two witnesses incredible and found Mr. Kegler credible, that's true.  However, shortly after that sentencing hearing, Mr. Parker contacted the government, through his attorney, in a desire to cooperate, and during a debrief in fact stated that everything Mr. Kegler had testified at that hearing was false; that he [Kegler] had in fact supplied Mr. Parker with drugs, and that those drugs had in fact been delivered to him by Mr. Binns and Mr. Johnson.  And as a result of that, our office began an investigation into a charge of perjury against Mr. Kegler.

Id., at 140-41.

To summarize, with respect to the Virginia case, Defendant was interviewed in North Carolina in December, 2002 (prior to the return of the Virginia indictment), but his information was deemed not to be useful.  He was interviewed again in April, 2004, but requested counsel (he was under indictment in West Virginia), and the interview terminated.  Nonetheless, Defendant was transported to Virginia from North Carolina in May, 2004, as a potential rebuttal witness to testify in the trial of Dennis Brown, but was not needed.  At the evidentiary hearing on December 16, 2008,

21

Dennis Brown testified that he did not see Defendant at the institution where he was in custody, but Dennis Brown knew that Defendant was listed as a prosecution witness.  Dennis Brown did not receive any discovery materials indicating what Defendant's testimony would have been.  Brown indicated that Defendant's presence and potential testimony was a factor, among others, in persuading Brown to plead guilty.  Defendant did not provide any additional information or testimony to Virginia prosecutors, and the prosecutors believe that he was not deserving of a substantial assistance motion.

With respect to the West Virginia case, Defendant had more than $38,000 seized as drug proceeds in November, 2002.  His debriefing in January, 2005 was not wholly truthful, as he admitted in March, 2005.  His testimony in February, 2006, concerning Michael Parker was considered by the government to be false.

In Virginia and West Virginia, Defendant had multiple opportunities to provide complete and truthful information and testimony which would have assisted the United States in the investigation and prosecution of several individuals.  Defendant repeatedly maintained silence or prevaricated; in short, the lack of a Rule 35 motion is attributable to Defendant's actions and not the government's.  The undersigned was presented with no evidence which proves that Defendant's guilty plea was induced by the promise of a substantial assistance motion.

The undersigned proposes that the presiding District Judge

**FIND** that neither the United States Attorney in the Southern District of West Virginia, or his authorized representative, nor the United States Attorney in the Eastern District of Virginia, or his authorized representative, made any promise to Defendant that the United States would file a Rule 35 motion on his behalf.

**Government's Motion to Dismiss**

On July 22, 2008, the United States filed a motion to dismiss (# 333) the § 2255 motion, asserting that Defendant's plea agreement was dispositive of the issues. As pointed out in an order entered August 18, 2008, Defendant's plea agreement was not the issue. The conflict in this case arose from AUSA Frail's comment at Defendant's sentencing.

### RECOMMENDATIONS

It is respectfully recommended that the presiding District Judge:

1.  Deny Defendant's § 2255 Motion (# 260);

2.  Deny Defendant's motion to produce testimony from AUSAs and documents from the U.S. Attorney's Office in the Eastern District of Virginia (# 330);

3.  Deny the government's motion to dismiss as moot (# 333).

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief United States District Judge. Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on the United States Attorney, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to Defendant and to counsel of record.


____January 5, 2009____
           Date

Mary E. Stanley
Mary E. Stanley
United States Magistrate Judge

24